# EXHIBIT 9

PLFS-100

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **American Federation of Teachers,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. Department of Education,** *et al.*, <br><br> Defendants. | Civil Case No. 1:25-cv-00628 |

**DECLARATION OF JOHN DOE**

I, John Doe, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am over eighteen years old, of sound mind, and fully competent to make this declaration.

2. I am a member of the American Sociological Association.

3. The American Sociological Association is a national professional membership association for sociologists.

4. American Sociological Association members include students, faculty, and people working in government agencies and non-profit and private organizations.

5. I fear retaliation and harassment against myself, my school, and my programs, so am submitting this declaration under pseudonym.

**My Work as a Faculty Member**

6. I am a faculty member and administrator at an institute of higher education in Maryland.

7. I have been in my position for more than 10 years.

8. I currently teach courses that address issues of ethnicity, race, and discrimination.

9. I engage in research relating to racial and social inequality across a wide range of topics and issues.

10. On campus, I am involved in a Center and a Program that both address race, ethnicity, and discrimination on campus and beyond.

11. The material that I teach in my classes is research-based. Any information that is discussed or shared in my courses has overwhelmingly been peer reviewed and published in reputable journals. My coursework and research all meet the highest standards for learning. All of it is based on objective data.

12. I believe that my courses, my institution's curriculum, and my involvement in the Center and the Program could be threatened by the language of the Dear Colleague Letter issued by the Department of Education. I am concerned that all or any of these things individually may be understood by the Department of Education to conflict with the language of the Dear Colleague Letter, and subsequently result in a costly and time consuming investigation that could ultimately result in the loss of federal funding for my institution. I am particularly concerned about the increased likelihood of investigations due to individuals filing reports through the Department of Education's new "End DEI" portal, where any student or parent, misled about the legality of these concepts, could file a complaint based on the language of the Dear Colleague Letter.

13. The language in the Letter is a threat to my courses, my research, and the programming I am involved in on campus. The broad language in the Letter opens up almost any teaching or research in my field to the potential for being investigated. Even basic

educational concepts such as social stratification, socialization, or health disparities could be interpreted as teaching students about "systemic and structural racism." My graduate courses and research address these issues even more directly, and involve examining racial structures and dynamics throughout the nation.

14. The Department of Education recently released a frequently asked questions document ("FAQs"). The language and answers in the FAQs did not allay any of my concerns or provide meaningful clarity regarding how the Department would view my coursework and research based on the language of the Letter for the purposes of an investigation.

**The Impact of the Letter on my Students**

15. If the Letter were to go into effect, it would have a deeply negative impact on my students. Almost all my interactions with my students would be implicated under a broad reading of the language of the Dear Colleague Letter. My research and teaching with students addresses systemic racism and the historical context of race and ethnicity in the United States.

16. In my classes, I teach using a historic frame. Using data, I show my students how racial progress has been made, how it has stalled, and how it is reversing in some instances. This provides them with vital historic context for them to understand the moment we are in and where we are coming from.

17. My approach with students is to help them understand that doing work on social inequality is important not just for the sake of persons who identify with historically marginalized or disadvantaged groups, but for everyone. It's important to understand the historic context for discrimination in our country so we can better prevent it. To reach that understanding, it is vital that we be able to have free and unrestricted discussions

about all relevant topics, including historic power structures, the history of racism, and critical current events. The language of the Letter directly prevents that learning from taking place. All of that historical context, would seemingly be labeled teachings on systemic and structural racism that are barred by the language of the Letter.

18. For all of my students the concept of inequality is an important linchpin for understanding micro and macro level interactions and processes. My undergraduate students learn about inequality at a general level and my graduate students address inequality in more specific ways, but studying this field would be virtually impossible for all of them under a broad reading of the Dear Colleague Letter language preventing the study of systemic and structural racism.

19. Enforcement of the new and different standards for discrimination by the Department of Education would stop my students from learning, researching, and taking their exams. Access to inequality data and learning is essentially and would seemingly be barred by the language of the Letter.

### The Impact of the Letter on my Career and my Ability to Teach

20. Already the looming threat of a Department of Education complaint and the arbitrary enforcement of the Dear Colleague Letter has impacted my thought process around my courses and programs.

21. I am concerned that even without an active investigation, the threat of the Dear Colleague Letter language may force my institution to proactively take action to prevent any reduction in federal funds.

22. My work on campus and throughout my career is deeply involved in racial and social inequality. I believe nearly all my teaching and research could be impacted by the threat

of an investigation, even though it is consistent with long-standing interpretations of state and federal law regarding discrimination.

23. I am worried about funding allocation for my Center and my courses being impacted by the language of the Letter. Already, staff members have approached me about changing their titles to avoid drawing attention to their roles in programming that could be targeted under the language of the Letter.

24. I am worried that my coursework could be targeted by unhappy students through the Department of Education "End DEI" portal for violating the language of the Letter around systemic and structural racism or discussing "explicit race-conciousness."

25. I am worried that ultimately, my courses could be removed, research could be stalled or never started, and articles won't be published or accepted. People around me are already becoming more cautious and the chilling effect is tangible.

26. The disruptive nature of the Dear Colleague Letter language and the FAQ is already manifesting in other ways too. I am increasingly seeing institutional resources dedicated to addressing concerns about compliance with the language of the Letter. Committees are being convened, faculty are being pulled into meetings, and time and resources are being allocated to address this massive change in guidance from the Department. This shift in institutional posture has burdened my time and capacity already. Instead of engaging in my substantive work, I have been forced to spend time and energy on determining if institutional policies and courses comply with the vague language of the Letter, largely to no avail. This is time that should be spent meeting with my students, furthering my research, or developing my courses.

PLFS-105

27. My institution relies significantly on federal funding, and losing that funding would result in issues across the board. That's why my institution's response has been so proactive already.

28. To me, it feels like the language of the Dear Colleague Letter forces me and my institution into an impossible choice of deciding between continuing to teach in a free and proper manner or face the threat of a costly and drawn-out federal investigation that could result in the loss of federal funding, harm to the institutional and or my own reputation, or even convictions.

**The Impact of the Letter on Student Support and Community at my Institution**

29. The Center and the Program I work with at my institution both provide robust programming and events for students on campus. This includes lecture series, speaker series, symposiums, and a national conference. These resources and experiences address a wide range of issues including reparations, social justice change, and racial equity. I often host and attend these programs, which inform my own teaching and research. I also frequently have my students attend and participate in these programs to broaden their learning outside of the classroom.

30. The Center and the Program both play critical roles on campus. The programming offered by both are open to all students and they represent very important things to my institution, providing essential cultural teachings and community for the entire population of my institution. This programming allows for important discussions to happen across the student body and is part of the communal healing of my institution.

31. I believe that the programming of the Center and the Program may be considered by the Department of Education to be DEI programs or serving as explicit race-consciousness

under the language of the Dear Colleague Letter. Despite the fact that this programming serves an essential role on campus and is consistent with longstanding interpretations of federal and state discrimination law, the Department could initiate an investigation. Even if the Department does not open an investigation, I am deeply concerned that my institution may try to temper this programming or change it altogether to try and comply with the broad language of the Dear Colleague Letter.

32. The language of the Dear Colleague Letter hangs over my campus and potentially implicates everything from courses to beloved programming. I am deeply concerned that the threat of a federal investigation will result in my institution preemptively curtailing some or all of these meaningful programs and practices. Such steps would deeply harm the students and campus community and would be deeply antithetical to the learning mission at my institution.

Maryland
March 26, 2025

_____
John Doe