# EXHIBIT 17

PLFS-153

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

**Fact Sheet: Harassment based on Race, Color, or National Origin on School Campuses**
**July 2, 2024**

The U.S. Department of Education's (Department's) Office for Civil Rights (OCR) provides this fact sheet to share information about schools' federal civil rights obligations under Title VI of the Civil Rights Act of 1964 (Title VI) and its implementing regulations to promptly and effectively address alleged acts of discrimination, including harassment. This fact sheet includes Questions and Answers, as well as examples, to assist school communities, including PreK-12 schools, colleges, universities, educators, faculty, students, parents/guardians, and families.

Title VI provides that no person may be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination on the ground of race, color, or national origin under any program or activity that receives federal financial assistance.[1] Virtually every public elementary or secondary school (including public charter schools) and public colleges and universities receive financial assistance from the Department and must comply with Title VI. Also, almost all private colleges and universities receive such assistance – for example, through federal student aid programs – and also must comply with Title VI.

OCR's enforcement activities have demonstrated that discriminatory harassment of students based on their race, color, or national origin continues to be a concern on school campuses.[2] Depending on the facts and circumstances, students who are subjected to slurs or taunts, or threatened or attacked based on their race, color, or national origin – including stereotypes about their race, color, or national origin – may be limited or denied access to educational programs or activities in violation of Title VI. OCR is committed to addressing harassment based on race, color, or national origin in our nation's schools and to supporting the efforts of schools to maintain campuses that are free from discrimination.[3]

## What is Harassing Conduct?

Harassing conduct is unwelcome conduct that may include verbal abuse, graphic or written statements, physical assault, or other conduct that may be threatening, harmful, or humiliating.

## Where Can Harassing Conduct Occur?

Harassing conduct may occur in many different contexts and locations, including classrooms (including virtual classes), residence halls, hallways, cafeterias, school buses, playgrounds, athletic fields, locker rooms, bathrooms, on the internet, and on social networking sites and apps.

## When Does Harassing Conduct Create a Hostile Environment that Violates Title VI?

Generally, unwelcome conduct based on race, color, or national origin creates a hostile environment under Title VI when, based on the totality of the circumstances, it is:

- subjectively and objectively offensive; and
- so severe or pervasive that it
- limits or denies a person's ability to participate in or benefit from the recipient's education program or activity.[4]

Harassing conduct need not always be targeted at a particular person to create a hostile environment.[5] The conduct may be directed at anyone, and the harassment may also be based on association with others of a different race, color, or national origin (*e.g.*, the harassment might reference the race of a sibling or

PLFS-154

parent/guardian because it is different from the race of the person being harassed whose access to the school's program is limited or denied).[6] Additionally, a single victim may experience a hostile environment when the conduct of multiple offenders, taken together, meets the definition above.

Whether harassing conduct creates a hostile environment on the basis of race, color, or national origin must be determined based on the totality of the circumstances.[7] Relevant factors for consideration may include, but are not limited to, the context, nature, scope, frequency, duration, and location of the harassment, as well as the identity, number, age, and relationships of the persons involved.

Generally, the less pervasive the harassing conduct, the more severe it must be to establish a hostile environment under Title VI. For example, in most cases, a single isolated incident would not be sufficient to establish a Title VI violation. However, in some cases, a hostile environment based on race, color, or national origin may result from a single severe incident if the conduct is subjectively and objectively offensive and so severe that it limits or denies a student's access to the education program or activity.[8]

OCR generally assesses a school's response to race, color, or national origin harassment using a hostile environment legal analysis. To establish a violation of Title VI using this analysis, OCR must find that:

1) a hostile environment based on race, color, or national origin existed;
2) the school had actual or constructive notice (i.e., the school knew or should have known) of the hostile environment; and
3) the school failed to take prompt and effective steps reasonably calculated to:
    i.   end the harassment,
    ii.  eliminate any hostile environment and its effects, and
    iii. prevent the harassment from recurring.[9]

**How Can School Officials Know When a Student May Be Experiencing a Hostile Environment?**

Some examples of ways in which school officials can become aware of harassing conduct that may create a hostile environment based on race, color, or national origin include:
- A comment or report by a student, parent/guardian, or other individual;
- A complaint filed;
- A teacher, staff member, or other school employee observing harassing behavior;
- Awareness of information shared by members of the community or the media; or
- Information shared with the school by other means.

**What Must a School Do to Address a Hostile Environment based on Race, Color or National Origin?**

To redress a hostile environment based on race, color, or national origin, a school has a legal duty to take prompt and effective steps that are reasonably calculated to: (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring.[10]

OCR evaluates the appropriateness of the school's responsive action by assessing whether it was reasonable, timely, and effective.[11] The appropriate response to a hostile environment based on race, color, or national origin must be designed to redress fully the specific problems experienced as a result of the harassment.[12] In the case of multiple harassers, for example, it likely is not sufficient to take responsive actions relating to only one harasser when the totality of the circumstances indicate that the school has a broader, environmental issue, and the remedial response should be adjusted appropriately.

OCR interprets Title VI and its implementing regulations consistent with free speech and other rights protected under the First Amendment to the U.S. Constitution. Nothing in Title VI or regulations implementing it requires or authorizes a school to restrict any rights otherwise protected by the First Amendment. Neither Title VI nor its implementing regulations require schools to enact or enforce codes that punish the exercise of such rights.[13]

*July 2, 2024*

**If Individuals File a Complaint or Assert Their Rights Under Title VI, Are They Protected from Retaliation or Intimidation by School Officials?**

Yes. Under Title VI, schools must prohibit retaliation against a person who complains about harassment on the basis of race, color, or national origin.[14]

Specifically, if a student, parent/guardian, school staff member, or other individual asserts their rights under Title VI, complains formally or informally to a school official about a potential civil rights violation, or participates in any manner in an OCR investigation or proceeding, the school is prohibited from intimidating, threatening, coercing, or otherwise retaliating against them because of their complaint or participation.[15] OCR vigorously enforces the retaliation provisions of Title VI.

**How Might OCR Consider Complaints Alleging Harassing Conduct on the Basis of Race, Color, or National Origin Under Title VI?**

OCR may open an investigation under Title VI where there are allegations of harassing conduct on the basis of race, color, or national origin. Conduct creates a hostile environment if it is unwelcome and based on the totality of the circumstances, it is subjectively and objectively offensive, and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity. OCR may investigate such complaints to determine whether a hostile environment exists and, if a hostile environment is found, whether the school took reasonable, timely, and effective action in response to the hostile environment.

The examples included below are intended to provide guidance about how OCR may consider complaints in this area where the school is a recipient of federal financial assistance. These examples do not predict or determine the outcome of any particular complaint that OCR might receive. Each of these examples is purely hypothetical. These examples discuss possible OCR actions based on limited hypothetical information and, therefore, should not be construed as definitive statements or binding requirements to be applied identically under similar circumstances. For each example, we have identified potential actions OCR could take; however, these examples have no binding effect on how the Department can exercise its enforcement discretion. OCR always analyzes the totality of the factual circumstances presented in each individual case.

In the examples below, OCR would likely have reason to open an investigation based on the facts included.

**Example 1**: Multiple teachers touch a Black student's hair on more than one occasion in front of other students and make comments about the student's hair, including asking if it is real or fake, if she straightens it, and how long it takes to straighten. Other students subsequently touch the student's hair and make similar comments. The student expresses concern to an administrator who assures her that teachers touch the student's hair because Black students' hair is unique and interesting. Even after the student informs the principal that these incidents have made her feel uncomfortable and have made it difficult for her to focus in class with those teachers, the school tells the student that the teachers were only trying to compliment her hair and does not take steps to prevent the conduct from recurring.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that the student may have experienced a hostile environment based on teachers and students touching the student's hair and making several comments about her hair, an investigation by OCR is warranted. If OCR's investigation confirms that teachers were commenting on and touching the student's hair based on her race and the student could no longer focus or feel comfortable attending class, these actions could constitute harassing conduct that is subjectively and objectively offensive as well as so severe or pervasive that it limits or denies the student's ability to participate in or benefit from the school's education programs or activities. Additionally, if OCR's investigation confirms that the school justified the teachers' behavior and failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Example 2:** During school, several students are subjected to the repeated use of racial slurs, including the n-word. Students raise their fists during class to mock Black power, and students create a club called the Kool Kids Klub, which they refer to as the KKK. Students display the confederate flag during Kool Kids Klub meetings. Students also mock police killings of Black people and state that Black people do not deserve to live. After students report the incidents, the school interviews the reporting students but does not collect additional information about the incidents. The school fails to take any steps to prevent the incidents from recurring. The principal tells the reporting students that he does not see any concerns with other students referring to themselves as the Kool Kids Klub and that if the reporting students wanted, they could start a club with an opposing viewpoint.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that one or more students may have experienced a racially hostile environment based on the students' actions mocking Black power, referring to themselves as the KKK, displaying the confederate flag during Kool Kids Klub meetings, and making negative comments about Black people, an investigation by OCR is warranted. After OCR opens an investigation, OCR would gather additional evidence with respect to the context of the incidents alleged, including but not limited to the frequency of the incidents, number of students involved, and the effects on students' ability to participate in or benefit from the recipient's education program or activity. If OCR determined that a hostile environment existed and concluded that the school's limited response was not reasonably calculated to (1) end the harassment, (2) eliminate its effects, and (3) prevent the incidents from recurring, OCR could find a violation of Title VI.

**Example 3**: During school, several students are subjected to racial slurs and insults, including statements that Asian students should "go back to their country" and "eat a dog." School staff members witness the conduct. The school fails to address the behavior. Despite receiving several reports of the incidents, the school also fails to conduct any investigations. After the students' parents inform the school that their kids no longer want to attend class, the school tells the affected students that they can transfer to another school in the district or attend school virtually if that would make them feel more comfortable.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that several students may have experienced a racially hostile environment based on the use of racial slurs and insults, an investigation by OCR is warranted. If OCR's investigation confirms these allegations, these actions could constitute harassing conduct that is subjectively and objectively offensive as well as so severe or pervasive that it may limit or deny the student's ability to participate in or benefit from the school's education programs or activities. Additionally, if OCR's investigation confirms that the school did not address behavior of other students, instead offered the option for affected students to transfer, and otherwise failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Example 4**: Indian students at a middle school report being mocked for their accents or English language skills. Additionally, Indian students report that their names are ridiculed and intentionally mispronounced by students and staff. Students also call an Afghan student "evil" and tell him to "go back to his country." Students report the incidents to administrators because they have started avoiding clubs and activities where they will encounter the offending students and staff. In response, the school's principal investigates but only interviews one student involved. In morning announcements, the principal tells students to treat each other with kindness, but the students' conduct continues.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that these students may have experienced a hostile environment based on their actual or perceived national origin, an investigation by OCR is warranted. OCR's investigation would need to confirm that the statements directed at the students constituted harassing conduct that is subjectively and objectively offensive as well as so severe or pervasive that it limits or denies the students' ability to participate in or benefit from the school's education programs or activities. Additionally, if OCR's investigation confirms that the school's only response was to talk to one student and issue a morning announcement, and that the school failed to otherwise take prompt and effective steps reasonably calculated to (1) end the harassment, (2)

eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI. A complainant is not required to allege ongoing harassment for OCR to open a complaint. However, here, the fact that the harassing conduct continued after the school's response provides some additional evidence that the response may not have been sufficient.

**Example 5**: At a college, several students organize a pro-Israel demonstration. After the demonstration, the students, many of whom were Israeli and Jewish, who organized the demonstration receive messages that include antisemitic slurs and death threats via a social media messaging app and via text messages from other students at the college. One message states that there are too many Israeli Jewish students at the college and that "Hitler got it right." After receiving these messages and reporting the messages to college administrators, the affected students miss class and seek mental health support at a campus clinic, and one student requests to finish the semester remotely. The following week, the college issues a statement condemning antisemitism and denouncing the messages as not aligned with the college's views. The college does not conduct any further investigation of the allegations relating to the social media or text messages to determine whether the Israeli and Jewish students experienced a hostile environment in the school's education program or activity, nor does the school assess whether they need additional supports.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that students may have experienced a hostile environment based on their Israeli national origin and their shared Jewish ancestry or ethnic characteristics, an investigation by OCR is warranted. If OCR's investigation confirms these allegations, these actions could constitute harassing conduct that is subjectively and objectively offensive as well as so severe or pervasive that it limits or denies the student's ability to participate in or benefit from the school's education programs or activities. Additionally, if OCR's investigation confirms that the school did not take actions beyond condemning antisemitism and denouncing the messages, and otherwise failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Example 6**: A Lebanese student files a harassment complaint with their university against an employee at a clinical placement site affiliated with the school. The student alleges that this employee treated them less favorably in several situations, referred to them as an "ignorant Arab," and told another staff member that there are "too many Muslims in this country." Even though university officials are aware of this complaint, they do not investigate and do not take any steps to prevent the incidents from recurring. A university official tells the student that it is entirely out of their hands since the incidents happened at a clinical placement and there is nothing they can do.

*OCR would have reason to open an investigation based on this complaint.* Because the complaint alleges specific facts that suggest that the student may have experienced a hostile environment based on the employee's comments about their national origin—including their shared ancestry and ethnic characteristics— an investigation by OCR is warranted. If OCR's investigation confirms these allegations, these actions could constitute harassing conduct that is subjectively and objectively offensive as well as so severe or pervasive that it limits or denies the student's ability to participate in or benefit from the school's education programs or activities. Additionally, if OCR's investigation confirms that the school told the student that they could not take any responsive action despite the school receiving notice of the harassing conduct at a clinical placement affiliated with the school and otherwise failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI. Here, the university incorrectly asserts that it cannot address the harassing conduct because the incidents happened at the clinical placement, but schools have an obligation to address such conduct, even at externships, if it creates or contributes to a hostile environment at the school.

**Example 7**: A high school student who recently immigrated from El Salvador reports that they were assaulted by other students on campus. During the assault, the other students yelled "Welcome to America!" A complaint is filed with the school alleging that a school resource officer witnessed the incident and reported it as "fighting," but not as harassment. The complaint alleges that the staff dismissed evidence that the assault was motivated by race or national origin, in part, because the school resource officer concluded the incident

was just "kids being kids." Although the school suspends the students who allegedly attacked the Salvadoran student, it does not conduct any further investigation or assess whether a hostile environment existed, or continues to exist, or whether the assaulted student needed supports.

*OCR would have reason to open an investigation based on this complaint.* As the complaint alleges specific facts suggesting that the student may have experienced a hostile environment based on the student's actual or perceived race or national origin, an investigation by OCR is warranted. If OCR's investigation confirms the allegations concerning the students' behavior, these actions could constitute harassing conduct that is subjectively and objectively offensive and so severe or pervasive that it limits or denies the student's ability to participate in or benefit from the school's education program or activity. Additionally, if OCR's investigation confirmed that the school only suspended students involved in the assault and failed to otherwise take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Example 8**: At a high school where the school's athletic teams are named the Redskins, the school uses the image of a scowling, fighting Native warrior in a headdress as its logo, which appears throughout the school's facilities and on school-produced attire worn routinely by students, teachers, and staff. An indigenous student on the football team informs the principal that team members regularly refer to him as "the Redskin" and "savage" and make jokes about him being the mascot in a social media group chat app used by the football team. Other team members make a video of the student scoring a touchdown that they share to social media, tagged as "the Redskin wins the game." The video includes a fake ritualistic Native chant using the student's name and referring to him as "the Redskin." The video is widely shared at school, and students who are not on the football team begin calling the student "the Redskin," "savage," and other mocking names. As a result, the student informs the principal that he finds the term "Redskin" offensive and wants to stop playing on the football team. In response, the principal warns the football coach to "control his players," but neither the coach nor the principal takes further action.

*OCR would have reason to open an investigation based on this complaint.* As the complaint alleges specific facts suggesting that the student may have experienced a hostile environment based on the student's actual or perceived race or national origin, an investigation by OCR is warranted. If OCR's investigation confirms the allegations concerning the slurs and other conduct by students towards the indigenous student, these actions could constitute harassing conduct that is subjectively and objectively offensive and so severe or pervasive that it limits or denies the student's ability to participate in or benefit from the school's education program or activity. Additionally, if OCR's investigation confirms that the school's only response was to warn the football coach to "control his players," and the school otherwise failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Example 9:** At a large public university a group of students, including Muslim and Arab students, form a new interfaith organization to encourage civil dialogue on campus. The student group organizes and participates in a campus vigil for peace. While the vigil is taking place, a large group of protestors from a neighboring school assembles nearby. The protestors chant things like "you're siding with terrorists," tell Muslim and Arab students they do not deserve to attend the university because they are "un-American," use racial and ethnic slurs towards the Muslim and Arab students, and tell them "end the vigil now or face the consequences." One of the protestors says to the Muslim and Arab students, "You don't deserve to be in America; you're all Arab terrorists anyway. Get out of here!" The Muslim and Arab students, feeling unsafe, leave the vigil. The next day, they report the statements of the protestors to an administrator and share that they do not feel safe on campus. The administrator tells them that the university is not responsible for what the protestors did because they have no control over external groups.

*OCR would have reason to open an investigation based on this complaint.* As the complaint alleges specific facts suggesting that the students may have experienced a hostile environment based on the students' actual or perceived race or national origin—including their shared ancestry and ethnic characteristics—an investigation by OCR is warranted. Protestors who are not members of the school community or any other visitor to a school community can contribute to the creation of a hostile environment. Accordingly, the fact that some

comments were made by students from another school would not affect OCR's investigation into whether the conduct contributed to a hostile environment within the school's education program or activity. If OCR's investigation confirms the allegations concerning the slurs and other conduct by the protestors towards the Muslim and Arab students, these actions could constitute harassing conduct that is subjectively and objectively offensive and so severe or pervasive that it limits or denies the involved students' ability to participate in or benefit from the school's education program or activity. Additionally, if OCR's investigation confirmed that the school took no further action and failed to take prompt and effective steps reasonably calculated to (1) end the harassment, (2) eliminate any hostile environment and its effects, and (3) prevent the harassment from recurring, OCR could find a violation of Title VI.

**Does OCR Have Additional Resources Relating to the Types of Examples Discussed Above?**

The following OCR resources may be helpful to school communities:

- U.S. Department of Education Office for Civil Rights, Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics (May 2024).
- U.S. Department of Education Office for Civil Rights, Dear Colleague Letter: Addressing Discrimination Against Muslim, Arab, Sikh, South Asian, Hindu, and Palestinian Students (March 2024).
- U.S. Department of Education Office for Civil Rights, Dear Colleague Letter: Discrimination, including Harassment, Based on Shared Ancestry or Ethnic Characteristics (November 2023).
- U.S. Department of Education Office for Civil Rights, Race and School Programming Dear Colleague Letter (August 2023).
- U.S. Department of Education Office for Civil Rights, Addressing Discrimination Against Jewish Students Dear Colleague Letter (May 2023).
- U.S. Department of Education Office for Civil Rights, Fact Sheet: Protecting Students from Discrimination Based on Shared Ancestry or Ethnic Characteristics (January 2023).
- U.S. Department of Education Office for Civil Rights, Fact Sheet: Diversity & Inclusion Activities Under Title VI (January 2023).
- U.S. Department of Education Office for Civil Rights, U.S. Department of Justice Civil Rights Division, White House Initiative on Asian Americans and Pacific Islanders, Combating Discrimination Against Asian American, Native Hawaiian, and Pacific Islander (AANHPI) and Muslim, Arab, Sikh, and South Asian (MASSA) Students (June 2016).
- U.S. Department of Education Office for Civil Rights, Harassment and Bullying Dear Colleague Letter (October 2010).

**What if Someone Experiences Harassment, Retaliation, or other Discrimination Under Title VI?**

Anyone who believes that they or someone else has been discriminated or retaliated against by a school or other recipient based on race, color, or national origin can file a complaint of discrimination with OCR using OCR's Electronic Complaint Assessment System. Complaint forms and other resources are available in languages other than English on OCR's Resources Available in Other Languages website.

To request technical assistance—including webinars, trainings, or presentations at conferences or other local events—concerning the legal obligations for schools under federal civil rights laws, you can contact OCR at 800-421-3481 (TDD: 800-877-8339), at OCR@ed.gov, or through the contact information for OCR's regional offices available on the OCR Addresses Webpage.

To request language access services or resources, which may include oral technical assistance or written translation of Department information, free of charge, contact OCR@ed.gov. If you need more information about interpretation or translation services, call 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-437-0833). To request documents in alternate formats such as Braille or large print, contact the Department at 202-260-0818 or ofo_eeos@ed.gov.

*July 2, 2024*

PLFS-160

The contents of this guidance do not have the force and effect of law and do not bind the public or create new legal standards. This document is designed to provide clarity to the public regarding existing legal requirements under Title VI.

Endnotes

[1] 42 U.S.C. §§ 2000d, *et seq. See* 34 C.F.R. Part 100. Title VI's protection from race, color, or national origin discrimination extends to students who experience discrimination, including harassment, based on their actual or perceived: (i) shared ancestry or ethnic characteristics; or (ii) citizenship or residency in a country with a dominant religion or distinct religious identity. *See* U.S. Department of Education Office for Civil Rights (OCR), Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics (May 2024). For more information, please *see T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 353-55 (S.D.N.Y. 2014) (giving deference to U.S. Department of Education's interpretation of its Title VI regulation and holding that discrimination based on shared ancestry and ethnic characteristics is prohibited by Title VI). *See also* OCR, Protecting Students from Discrimination Based on Shared Ancestry or Ethnic Characteristics Fact Sheet (Jan. 2023).

[2] Throughout this fact sheet, "school" is used generally to refer to elementary, secondary, and postsecondary educational institutions that are recipients of federal financial assistance.

[3] *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.").

[4] In addition to the guidance cited in note 9, *infra*, see *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639-44 (1999) (discussing student-on-student harassment standards for damages actions under Title IX of the Education Amendments of 1972 (Title IX)) and *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 280-90 (1998) (discussing teacher-on-student harassment standard for Title IX). In analyzing racial harassment claims, OCR relies on the legal principles articulated in cases under Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits employment discrimination based on race, color, religion, sex, and national origin, and Title IX. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-698 (1979) (stating that Title IX was modeled on Title VI); *Franklin v. Gwinnett Cty. Public Schs.,* 503 U.S. 60, 75 (1992) (applying Title VII principles to Title IX case).

[5] This standard is well established under Title VII case law, on which courts often rely for interpreting Title VI. *See Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989) (all sexual graffiti in office, not just that directed at plaintiff, was relevant to plaintiff's claim); *Hall v. Gus Construction Co.*, 842 F.2d 1010, 1015 (8th Cir. 1988) (evidence of sexual harassment directed at others is relevant to show hostile environment); *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358-59 (11th Cir. 1982) (hostile environment established where racial harassment made plaintiff "feel unwanted and uncomfortable in his surroundings," even though it was not directed at him).

[6] *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims [employment] discrimination [under Title VII of the Civil Rights Act of 1964] based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race.); *Chacon v. Ochs*, 780 F. Supp. 680, 681 (C.D. Cal. 1991) (applying *Parr* to an incident of racial harassment); EEOC Compliance Manual, Section 15: Race & Color Discrimination (2006). For examples, *see* OCR, Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on Basis of Sex; Race, Color and National Origin; and Disability, 2 - 6 (Oct. 2010).

[7] See *Hendrichsen v. Ball State Univ.*, 107 F. App'x. 680, 684 (7th Cir. 2004) (Title IX case); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998); *Elliott v. Delaware State Univ.*, 879 F. Supp. 2d 438, 446 (D. Del. 2012).

[8] *Cf. Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 n.4 (6th Cir. 2000) (quoting *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me. 1999) ("Within the context of Title IX of the Education Amendments Act of 1972, a student's claim of hostile environment can arise from a single incident"); *Barrett v. Omaha National Bank*, 584 F. Supp. 22 (D. Neb. 1983), *aff'd*, 726 F.2d 424 (8th Cir. 1984) (Title VII) (sexually hostile environment established by sexual assault). *See also* Racial Incidents and Harassment against Students at Educational Institutions: Investigative Guidance, 59 Fed. Reg. 11,448 (Mar. 10, 1994); EEOC, Enforcement Guidance on Harassment in the Workplace, No. N-915.064 (Apr. 29, 2024) (interpreting Title VII).

[9] *See* Racial Incidents and Harassment against Students at Educational Institutions: Investigative Guidance, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994); OCR's Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on Basis of Sex; Race, Color and National Origin; and Disability at 2, 4, 6 (Oct. 2010); OCR's Dear Colleague Letter on Race and School Programming (Aug. 2023).

[10] *See supra* note 4.

[11] *See* Racial Incidents and Harassment against Students at Educational Institutions: Investigative Guidance, 59 Fed. Reg. 11,448, 11,450 (Mar. 10, 1994).

[12] *Zeno v. Pine Plains Centr. Sch. Dist.*, 702 F.3d 655, 670-71 & n.14 (2d Cir. 2012).

[13] *See* OCR, First Amendment: Dear Colleague (July 2003).

[14] *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,882 (April 29, 2024) (to be codified at 34 CFR 106) (amending the Department's Title IX regulations effective August 1, 2024, and clarifying that under Title IX, peer retaliation, which is defined as retaliation by one student against another student, is also prohibited). As of July 2, 2024, pursuant to federal court orders, the 2024 Title IX regulations will not go into effect on August 1, 2024, in the states of Alaska, Idaho, Indiana, Kanas, Kentucky, Louisiana, Mississippi, Montana, Ohio, Tennessee, Utah, Virginia, West Virginia, and Wyoming. The Department's Title IX regulations, as amended in 2020, remain in effect in these states pending further court orders.

[15] *See* Title VI implementing regulations, 34 C.F.R. § 100.7(e). Other federal civil rights laws that OCR enforces also prohibit retaliation. *See*, *e.g.*, Section 504 of the Rehabilitation Act of 1973 implementing regulations, 34 C.F.R. § 104.61 which prohibits disability discrimination; and Title IX of the Education Amendments of 1972, 34 C.F.R. § 106.71, which prohibits sex discrimination. Also, the regulations implementing Title II of the Americans with Disabilities Act at 28 C.F.R. § 35.134 prohibit disability discrimination; OCR and the U.S. Department of Justice share in the enforcement of Title II of the ADA.