# EXHIBIT 18

PLFS-163

**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE FOR CIVIL RIGHTS**

**Resource: Resolving a Hostile Environment Under Title VI**
*Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics*

---

The Department of Education's (Department's) Office for Civil Rights (OCR) provides this resource to assist school communities in understanding their obligations under Title VI of the Civil Rights Act of 1964 (Title VI) and to discuss some considerations for schools when taking action to remediate a hostile environment under Title VI. Title VI prohibits discrimination based on race, color, and national origin, including shared ancestry or ethnic characteristics, in the programs or activities of all recipients of federal financial assistance. These protections extend to students and school community members who share or are perceived to share ancestry or ethnic characteristics, including but not limited to students who are Jewish, Israeli, Muslim, Arab, Sikh, South Asian, Hindu, or Palestinian.

OCR enforces Title VI with respect to recipients of federal financial assistance from the Department, including school districts, public schools, and public and private colleges.

The existence of a hostile environment based on race, color, or national origin that is created, encouraged, accepted, tolerated, or left uncorrected by a school can constitute discrimination in violation of Title VI. Harassment creates a hostile environment under Title VI if school staff, a student, or another person engages in unwelcome conduct based on race, color, or national origin that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity. OCR could find a Title VI violation in its enforcement work if: (1) a hostile environment based on race, color, or national origin existed; (2) the school had actual or constructive notice (in other words, the school knew or should have known) of the hostile environment; and (3) the school failed to take prompt and effective steps reasonably calculated to (i) end the harassment, (ii) eliminate any hostile environment and its effects, and (iii) prevent the harassment from recurring.[i]

---

*For more information on actions which may create or contribute to a hostile environment under Title VI, see OCR's Fact Sheet: Harassment based on Race, Color, or National Origin on School Campuses; Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics; and Dear Colleague Letter: Race and School Programming.*

---

When a school is taking action to remediate a hostile environment, just as when taking any other action, Title VI prohibits a school from discriminating against students on the basis of race, color, or national origin. For example, a school cannot discriminate against a group of students in addressing a hostile environment for a separate group of students. If part of a school's remedial actions treats students differently because of their race, color, or national origin, constitutes retaliation, or creates or contributes to a hostile environment against students, those actions could

**PLFS-164**

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 3 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

constitute discrimination (e.g., a school disciplining students of one race more harshly than students of other races for similar actions that led to a hostile environment).[ii] When OCR resolves investigations with schools related to a hostile environment or any other potential form of discrimination, OCR would not require or permit remedial actions by schools that discriminate against other students.

In agreeing to resolve OCR investigations of whether schools have violated Title VI, schools have agreed to take actions including but not limited to:

- Reviewing, amending, clarifying, or creating policies and procedures for responding to harassment, and general nondiscrimination policies.
- Offering counseling and academic support services, like tutoring or supplemental or extended instruction time.
- Providing training to staff, including, as relevant, campus law enforcement, on the institution's responsibilities, what constitutes discrimination under Title VI, and what staff should do to prevent, investigate, or remediate discrimination.
- Creating anti-harassment education programs, messages, events, assemblies, and/or groups.
- Conducting climate surveys and/or creating focus groups of students and members of the school community to evaluate the extent to which students and/or employees are subjected to or witness discrimination and harassment based on race, color, or national origin, including discrimination based on actual or perceived shared ancestry or ethnic characteristics, and are aware of procedures for reporting such discrimination.
- Reviewing, updating, or creating policies for how a school documents or maintains records pertaining to reports of incidents of discrimination or harassment.
- Posting notices on school websites and in school communications about how to file a complaint.

OCR's [website](#) includes thousands of resolution agreements pertaining to all of the federal civil rights laws enforced by OCR, each containing actions that a school agreed to take to remediate discrimination or resolve concerns about possible discrimination. These resolutions reflect agreements specific to the facts and circumstances of each investigation. Nonetheless, they may be helpful in a school's consideration of possible actions to remediate a hostile environment.

The following text summarizes a sampling of OCR investigations from the last decade involving allegations of a hostile environment for students on the basis of race, color, or national origin. These investigations highlight ways that OCR has applied the law to facts and illustrate the types of remedies OCR has previously obtained.[iii] The facts highlighted in the summaries below do not constitute all of the information that formed the basis for OCR's findings or concerns but illustrate some of the relevant facts in each case.[iv]

### A. Fremont Unified School District, California (April 2017) ([Resolution Letter](#)) ([Resolution Agreement](#))

In April 2017, OCR resolved a compliance review assessing whether students who are Sikh or Middle Eastern were harassed on the basis of their actual or perceived shared ancestry or ethnic characteristics.

Case 1:25-cv-00628-SAG    Document 31-21    Filed 03/28/25    Page 4 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

During OCR-conducted focus groups, students described incidents of harassing conduct by peers and some staff which included slurs and name calling, negative comments on clothing related to articles of faith, and comments related to the students' accents or English language skills, type of food eaten, or names that were less-common or unfamiliar to staff or peers. OCR also reviewed multiple District reports of incidents that involved students calling other students "terrorists," mocking students' accents, and teasing students for wearing turbans and headscarves.

Although reports indicated that teachers and administrators intervened in most if not all of the incidents that were reported to District personnel, OCR's investigation nevertheless identified concerns in the District's handling of multiple incident reports, including many instances where the District's records did not reflect that the District made a determination as to whether the alleged harassment created a hostile environment, and if so, whether it took steps to eliminate it, prevent its recurrence, and, where appropriate, remedy the effects of the harassment on the student who was harassed and, if necessary, on the broader school community.

To resolve the Title VI compliance concerns OCR identified, the District agreed to take actions including to:

- Issue and publicize a statement that the District does not tolerate acts of harassment based on race, color, or national origin, with information encouraging reporting of such harassment.
- Schedule training for (1) staff on cultural responsiveness and sensitivity, and on processing, documenting, investigating, and/or resolving complaints of harassment based on race, color, or national origin; and (2) students on understanding harassment and promoting respect and appreciation of all cultures.
- Review its accommodations and excused absence policies to ensure that they do not discriminate against students based on race, color, or national origin.
- Provide a forum for, and facilitate conversations with, District students to improve cultural awareness and discuss questions and concerns about harassment based on race, color, or national origin.
- Establish a working group of District personnel, community representatives, parents, and students to make recommendations regarding the effectiveness of the District's harassment-prevention efforts.
- Conduct a climate survey to assess the educational environment for District students and develop a monitoring program to assess the effectiveness of its harassment-prevention efforts.
- Host a parent and community meeting, in conjunction with OCR, to discuss the remedial actions discussed above.

**B. Maple Run Unified School District, Vermont (July 2018) ([Resolution Letter](#))
([Resolution Agreement](#))**

In July 2018, OCR resolved a complaint alleging harassment of a student on the basis of race by a school employee.

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 5 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

OCR's investigation found that the District completed its own independent review and determined that additional steps were needed. The District provided substantial documentation to OCR regarding its remedial actions, such as providing multiple trainings related to facilitation of bias-free environments to the employee and having the District's Equity Coordinator meet with the employee on a monthly basis to enhance the employee's understanding of the District's policies addressing diversity and harassment.

To ensure that outlined actions were completed and further resolve the issues giving rise to the complaint, the District agreed to take actions including to:

- Provide District athletic coaches with racial bias training.
- Ensure District coaches and assistant coaches meet with a sports psychologist to discuss team culture and inclusion, and with the District's Equity Coordinator to discuss harassment, including the District's hazing, harassment, and bullying policy and procedures; the District's obligation to respond to and effectively resolve allegations of harassment that may create a hostile environment; and resources available to students and employees.
- Ensure that the coaches and assistant coaches' discussions about allegations or findings of hazing, harassment, or bullying involving team members are confidential.
- Ensure coaches and assistant coaches understand their role with regard to training and reporting incidents as outlined in District policy.
- Provide access to the school's guidance counselor for support or assistance regarding issues arising from harassment, equity, or racial bias.
- Offer to facilitate a conversation between the student and employee to promote further learning and understanding and to provide the opportunity for the employee's expressions and acknowledgements of concern and regret, and discuss the actions the District has taken in response to the complaint of racial harassment and identify available resources.

C. **University of North Carolina at Chapel Hill, North Carolina (November 2019)**
   ([Resolution Letter](#)) ([Resolution Agreement](#))

In November 2019, OCR resolved a complaint alleging the University discriminated against students of Jewish descent on the basis of national origin in connection with a University hosted conference in which a music artist made offensive and antisemitic comments during his performance. The complaint also alleged there were swastikas drawn on the University campus and antisemitic flyers in a University library after the conference.

The University did not dispute that the artist made offensive, antisemitic comments during his performance at the conference, and that antisemitic flyers were discovered at a campus library two weeks after the conference that included language such as "evil Jewish plot to enslave and kill you" and that books with swastikas on the cover were left on a table in the library.

Although the University took steps to respond to the alleged harassment, the University agreed to take further action to resolve the issues giving rise to the complaint, including:

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 6 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

- Issuing a statement to its community that the University does not tolerate acts of prohibited harassment, including antisemitic harassment, and encourage members of the community to report any such incidents to the University.
- Reiterating in its written policies the University's commitment to an environment free from prohibited harassment, including antisemitic harassment.
- Ensuring that the University's written policies describe the forms of antisemitism that can manifest in the University environment.
- Including a component on prohibited harassment, including antisemitic harassment, in each training/orientation offered to the University community regarding the policies for three academic years.
- Hosting at least one meeting per year providing students, faculty, and staff the opportunity to discuss with University administrators any concerns they have about incidents of prohibited harassment for two academic years.

D. **Alpine Union School District, California (March 2021) ([Resolution Letter](#)) ([Resolution Agreement](#))**

In March 2021, OCR resolved a complaint investigating whether the District subjected a student to a hostile environment on the basis of race by failing to respond appropriately and effectively to notice of race-based harassment.

OCR found multiple instances where a Black student was called racial names related to his skin color and hair and was called racial epithets, including the n-word, and on at least one occasion, other students hit, pushed, and threatened the student. OCR found that the conduct was sufficiently serious to create a hostile environment for the student, and that the District failed to take adequate action to respond to the incidents, including failing to discipline or otherwise address the harassment by the other students.

To resolve the violation that OCR identified, the District agreed to take actions including to:

- Offer to provide or pay for the cost of counseling and/or educational tutoring services for a set amount of hours.
- Issue a statement to the school community, including all parents/guardians, employees, and students, that the District does not tolerate acts of harassment based on race, color, or national origin, which must include information encouraging reporting, identify the individual responsible for investigating reports of harassment, and state that retaliation is prohibited.
- Issue a guidance memorandum to relevant District employees on the District's obligations under Title VI, including an explanation of the District's Title VI policies, staff obligations under the policies, and information about OCR.
- Provide ongoing anti-discrimination training for students which includes examples of prohibited conduct, including harassment in various school-related contexts.
- Administer climate surveys to students, parents, and staff.

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 7 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

### E.  Peoria Unified School District, Arizona (September 2022) ([Resolution Letter](#)) ([Resolution Agreement](#))

In September 2022, OCR resolved a complaint alleging race-based harassment of a Black student by student peers and employees in an Arizona school district. In addition, during its investigation, OCR identified numerous other incidents of peer harassment based on race, color, and national origin of other students in the district.

Peer harassment included race-based slurs, such as repeatedly using the n-word and saying "ching chong" at students, mocking police killings of Black people, pulling eyes back to mock Asian students, mimicking "Heil Hitler" salutes, drawing swastikas on photographs of students' faces on notebooks and in a bathroom, and saying Black people "do not deserve to live" and "should die," a student's skin looked like "burnt" food, and that a student should "go back to [their] country" and "eat dog."

Harassment by employees involved repeated touching of and comments exclusively about the Black student's hair. The harassment and the District's ineffective response to the student's complaints of the racial harassment caused significant and enduring academic, social, and emotional harm to the student who was the subject of the OCR complaint. Moreover, OCR found that a schoolwide hostile environment existed because at least a dozen other students of color at the school were likewise harassed based on race, color, or national origin by numerous peers.

Although administrators and teachers at the school were aware of widespread harassment, the District repeatedly responded ineffectively, or not at all, to reported harassment, allowing the harassment to persist and to create a school-wide hostile environment. The District also did not offer any supports or remedies to students who were harassed.

To resolve the concerns OCR identified, the District agreed to take actions including:

- Provide supports and remedies, where appropriate, to students who were subjected to peer harassment based on race, color, or national origin at the school.
- Conduct a climate assessment that examines the prevalence of race, color, or national origin harassment at the school, perceptions of the school's and District's handling of reports and complaints of harassment, and measures for reducing harassment at the school and for improving the District's response to reports and complaints of harassment.
- Issue an anti-harassment statement and issue a notice to parents about identifying and reporting harassment and about how the District is expected to respond.
- Review, revise, and disseminate policies, forms, and record-keeping procedures related to harassment based on race, color, and national origin.
- Train staff about legal requirements under Title VI, reporting and responding to harassment, prohibited retaliation, cultural competency, and implicit bias.
- Provide developmentally appropriate educational programs about how to recognize and report racial harassment for school students.

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 8 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

F.  **Ottumwa Community School District, Iowa (December 2022)** (Resolution Letter) (Resolution Agreement)

In December 2022, an OCR investigation determined that a student had been subjected to a hostile environment for two years due to race harassment and that the school district violated Title VI because it had notice of the hostile environment but failed to take necessary steps to protect the student.

The harassment included racial slurs, including calling the student the "n" word, a "slave" to white students, "blackie," and "cotton-picker." Students also made monkey noises in class toward the student and raised their fists in the air to mock Black Power. One white student used the term KKK as a reference to the "Kool Kids Klub," and another knelt on a Gatorade bottle in the student's presence and said, "It can't breathe," mimicking George Floyd's death.

OCR concluded that school administrators ineffectively responded to reported harassment that had created a hostile environment.

To resolve the Title VI violation that OCR identified, the District agreed to take actions including:

- Revise District policies and procedures to ensure the District adequately addresses the Title VI prohibition on discrimination based on race, color, or national origin.
- Train District staff on the District's nondiscrimination and harassment policies.
- Train students at the School on the District's nondiscrimination and harassment policies.
- Track and maintain data concerning incidents of racial harassment and discrimination involving District students sufficient to determine Title VI compliance.
- Conduct a climate survey to inform the District regarding the effectiveness of its steps to ensure racially hostile environments do not operate on its campuses and conduct an annual audit to review the effectiveness of its practices.

G.  **Park City School District, Utah (March 2024**) (Resolution Letter) (Resolution Agreement)

In March 2024, OCR resolved seven complaints alleging that student-to-student harassment based on race, national origin, disability, and sex created hostile environments for students in a school district in Utah.

OCR found the District received more than 180 reports of students harassing other students based on race, national origin, sex, and disability during school years 2021-22 and 2022-23. OCR also found that the District took some action to address this harassment, such as disciplining harassing students.

However, the District's responses to repeated harassment of Black, Asian, and Jewish students and to harassment based on sex—including slurs, threats, name-calling, gestures, symbols, and

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 9 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

assaults, among other actions that negatively affected their access to education—did not meet the District's federal civil rights obligations.

In particular, the District repeatedly failed to investigate allegations of race and national origin harassment, including allegations of antisemitism, to take effective steps to end hostile environments based on race and antisemitic harassment that the District confirmed, and to provide complainants information about the availability of supportive measures and how to file a formal complaint of sexual harassment.

To resolve the violations and compliance concerns OCR identified, the District agreed to take actions, including:

- Review incidents of harassment based on race, national origin, sex, and disability in school year 2022-23, using a list of specific incidents provided by OCR, to determine for OCR's approval what further action is needed to provide an equitable resolution of each incident.
- Review, revise as necessary, and disseminate districtwide policies and procedures, including for handling reports of harassment and maintaining records related to harassment.
- Implement new forms for tracking reports of harassment and the District's responses.
- Notify students and parents about the District's prohibitions of harassment based on race, national origin, sex, and disability, and how to report harassment on these bases.
- Conduct a District-wide climate assessment focused on student-to-student harassment.
- Implement a plan to educate students and parents about reporting harassment.
- Report to OCR about how the District responded to reports and complaints of harassment based on race, national origin, sex, or disability in school years 2024-25 and 2025-26.

**H. University of Illinois – Urbana Champaign, Illinois (September 2024) ([Resolution Letter](#)) ([Resolution Agreement](#))**

In September 2024, OCR resolved an investigation of the University of Illinois – Urbana Champaign that investigated allegations of numerous incidents of antisemitism, including the recurring appearance of swastikas throughout campus; mezuzot ripped off students' doors; and a brick thrown through the window of a Jewish fraternity.

During the investigation, OCR identified additional concerns regarding whether the University met its obligation under Title VI to assess whether a hostile environment was created for students, faculty, or staff related to complaints the University received regarding allegations of anti-Jewish, anti-Israeli, anti-Muslim, anti-Palestinian, and anti-Arab discrimination. The investigation also reflected that University programs charged with responding to complaints of national origin harassment lacked coordination and inconsistently applied University policies and procedures, leading to potential gaps in the University's ability to address a hostile environment on the basis of discrimination based on shared ancestry or ethnic characteristics.

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 10 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

To resolve the compliance concerns OCR identified, the University committed to take actions including:

- Review and as necessary revise its nondiscrimination policies and procedures to ensure they consistently require the University to assess whether incidents of reported shared ancestry discrimination or harassment have created a hostile environment within the University's education program or activity and acknowledge that conduct that may have taken place off campus or on social media can contribute to a hostile environment within a University program or activity.
- Provide training to University law enforcement personnel as well as to all employees and staff responsible for investigating complaints and other reports of discrimination, including harassment, based on shared ancestry or ethnic characteristics.
- Conduct annual training on discrimination based on national origin, including harassment based on shared ancestry or ethnic characteristics, for all faculty, staff, and students.
- Conduct a review of the University's response to complaints and reports of antisemitic and other shared ancestry discrimination during the 2023-2024 academic year and take necessary remedial actions.
- Provide OCR with information regarding any complaints alleging discrimination, including harassment, on the basis of shared ancestry during the 2024-2025 school year, and complete additional steps as directed by OCR.
- Administer a climate survey to students and staff and create an action plan, subject to OCR approval, in response to concerns raised in the survey.

---

If you believe that you or someone else experienced discrimination, or that you were or someone else was subjected to unlawful retaliation for complaining of discrimination or participating in an investigation or proceeding regarding violation(s) of federal civil rights laws enforced by OCR, or for otherwise asserting rights under the laws enforced by OCR, you can file a complaint using OCR's Electronic Complaint Assessment System. Complaint forms and other resources are available in languages other than English on OCR's Resources Available in Other Languages website.

To request technical assistance—including webinars, trainings, or presentations at conferences or other local events—concerning the legal obligations for schools under federal civil rights laws, you can contact OCR at 800-421-3481 (TDD: 800-877-8339), at OCR@ed.gov, or through the contact information for OCR's regional offices available on the Contact OCR Webpage.

To request language access services or resources, which may include oral technical assistance or written translation of Department information, free of charge, contact OCR@ed.gov. If you need more information about interpretation or translation services, call 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-437- 0833). To request documents in alternate formats such as Braille or large print, contact the Department at 202-260-0818 or ofo_eeos@ed.gov.

Case 1:25-cv-00628-SAG   Document 31-21   Filed 03/28/25   Page 11 of 11

**Resolving a Hostile Environment Under Title VI:** Discrimination Based on Race, Color, or National Origin, Including Shared Ancestry or Ethnic Characteristics

The contents of this resource do not have the force and effect of law and do not bind the public or create new legal standards. This document discusses OCR's application of these legal requirements in certain investigations.

Endnotes

[i] *See* Racial Incidents and Harassment against Students at Educational Institutions: Investigative Guidance, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994); OCR's Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on Basis of Sex; Race, Color and National Origin; and Disability at 2, 4, 6 (Oct. 2010); OCR's Dear Colleague Letter on Race and School Programming (Aug. 2023); OCR's Dear Colleague Letter on Protecting Students from Discrimination, such as Harassment Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics (May 2024); OCR's Fact Sheet on Harassment based on Race, Color, or National Origin on School Campuses (July 2024).

[ii] For more information on the prohibitions against retaliation, see OCR's Civil Rights Protections Against Retaliation resource. For additional discussion on actions which may be different treatment under Title VI, see OCR's Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics and Dear Colleague Letter: Race and School Programming.

[iii] This resource is for informational and technical assistance purposes only. It does not constitute final agency action, as it does not have an immediate and direct legal effect. It does not create any new rights or obligations, and it is not enforceable. Neither OCR's investigations nor the summaries included in this resource constitute binding precedent. Additionally, these examples are not exhaustive, and the facts and circumstances of each case are unique. OCR preserves its discretion to investigate and assess the facts of each case individually and apply the law to the facts. OCR also preserves its discretion to determine appropriate remedies based on the specific facts and circumstances of each case. The investigations discussed in this resource were resolved at various stages of review, including in some cases based on concerns that OCR identified before completing an investigation and before OCR made findings of a violation of the law.

[iv] Nothing in Title VI or regulations implementing it requires or authorizes a school to restrict any rights otherwise protected by the First Amendment to the U.S. Constitution. OCR enforces the laws within its jurisdiction consistent with the First Amendment. *See* OCR's Dear Colleague Letter: First Amendment (July 2003); OCR's Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics (May 2024). That harassing conduct may include protected speech in a public setting or protected speech motivated by political or religious beliefs, however, does not relieve a school of its obligation under Title VI to respond if the harassment creates a hostile environment in school for a student or students. Schools have a number of tools for responding to a hostile environment—including tools that do not restrict any rights protected by the First Amendment.